# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHRISTINE STANGO<br>1635 Jones Ave.<br>Phoenixville, PA 19460<br><br>    Plaintiff,<br><br>    v.<br><br>SPARTA SYSTEMS, INC.<br>d/b/a Sparta Systems<br>2000 Water View Dr., Suite 330<br>Hamilton Twp., NJ 08691<br>    and<br>HONEYWELL INTERNATIONAL, INC.<br>d/b/a Honeywell<br>855 South Mint St.<br>Charlotte, NC 28202<br><br>    Defendants. | CIVIL ACTION<br><br>CASE NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Christine Stango (hereinafter referred to as "Plaintiff" unless indicated otherwise) hereby complains as follows against Sparta Systems, Inc., and Honeywell International, Inc. (hereinafter collectively referred to as "Defendants", unless otherwise indicated), and avers as follows:

### INTRODUCTION

1.  Plaintiff initiates the instant action to redress violations by Defendants of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e, *et. seq*.), the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*), the New Jersey Law Against Discrimination ("NJ LAD" - N.J.S.A. 10:5-1, *et. seq*.), the Diane B. Allen Equal Pay Act ("NJ Equal Pay Act"), N.J.S.A. §§ 34:11-56. 56a, *et seq*), and 29 U.S.C. § 206 and 29 U.S.C. §

215(a)(3) [collectively the Equal Pay Act - "EPA"]. As a result of Defendants' unlawful actions, Plaintiff has suffered damages as set forth herein.

## JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. Upon information and belief, Sparta Systems, Inc. is incorporated under the laws of Delaware with headquarters and/or a principal place of business in New Jersey, rendering it a citizen of Delaware and New Jersey.

4. Upon information and belief, Defendant Honeywell International, Inc. is incorporated under the laws of Delaware with headquarters and/or a principal place of business in North Carolina, rendering it a citizen of Delaware and North Carolina.

5. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania, and Defendants are citizens of Delaware, North Carolina, and New Jersey, and the amount in controversy exceeds $75,000.

6. This action is also being initiated pursuant to federal laws (Title VII and ADEA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States.

7. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

8. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying

the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

9. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendants conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

10. Plaintiff filed Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is an adult female with an address as set forth in the above caption.

13. Defendant Sparta Systems, Inc. (hereinafter "Defendant Sparta") is a corporation headquartered at the above-captioned address that provides enterprise software solutions.

14. Defendant Honeywell International, Inc. (hereinafter "Defendant Honeywell") is a corporation headquartered at the above-captioned address that operates in four areas of business: aerospace, building technologies, performance materials, and technologies (PMT), and safety and productivity solutions (SPS).[1]

---

[1] Defendant Sparta and Defendant Honeywell are hereinafter collectively referred to as "Defendants," unless indicated otherwise.

15. On or about February 21, 2021, Defendant Honeywell acquired Defendant Sparta and Defendant Sparta became a "Honeywell Company" or subsidiary of Defendant Honeywell.

16. Plaintiff asserts claims against Defendant Sparta and/or Defendant Honeywell for gender disparities regarding compensation that occurred before Defendant Honeywell's acquisition of Defendant Sparta in February of 2021.

17. Defendant Honeywell is liable herein for any claims preceding February 21, 2021 under the Successor Liability Doctrine since, upon information and belief:

   a. Defendant Honeywell has maintained a continuity of operations of Defendant Sparta without interruption.

   b. Defendant Honeywell performs the identical services for the same clientele and with generally the same underlying employees who worked for Defendant Sparta (when operating independently);

   c. The majority of Defendant Sparta employees maintained their employment upon Defendant Honeywell's acquisition of Defendant Sparta;

   d. Defendant Honeywell operates Defendant Sparta with substantially the same equipment as was used when Defendant Sparta operated independently of Defendant Honeywell; and

   e. Defendant Honeywell is in the best position to provide relief sought herein.

18. Defendant Sparta and Defendant Honeywell are also both liable for any claims that Plaintiff asserts for discrimination and/or retaliation after February 21, 2021 as single and/or joint employers.

19. For example, after February 21, 2021, Defendants' interrelation of operations, common ownership or management, centralized control of labor relations, and common financial

controls, are such that Defendants became sufficiently interrelated and integrated in their activities, labor relations, ownership, and management that they may be treated as a single and/or joint employer for purposes of the instant action.

20. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

## FACTUAL BACKGROUND

21. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

22. Plaintiff is a 52-year-old adult female.

23. Plaintiff was initially hired to work for Defendant Sparta as the Manager of Talent Acquisition by Chief Human Resources Officer – Sharon Marnien (hereinafter "Marnien").

24. In or about January of 2020, Plaintiff's title change from Manager of Talent Acquisition to Global Director of Talent Acquisition.

25. At all times relevant herein, Plaintiff reported out of Defendants' New Jersey location.

26. Throughout her employment with Defendant Sparta, Plaintiff observed and was subjected to significant gender discrimination, including gender disparities in compensation, gender-related disparities in job titles/promotions, and gender-related disparities in hiring and retention.

27. Even after Defendant Honeywell acquired Defendant Sparta, Plaintiff continued to be subjected to gender discrimination including the reasons associated with her termination in March of 2022 (discussed further *infra*).

28. By way of specific example, but not intending to be an exhaustive list:

   i. When Plaintiff was hired by Defendant Sparta, she requested a director-level title; however, Plaintiff was informed by Marnien that Defendant Sparta was too small of a company to have director titles. However, after starting her employment with Defendant Sparta, Defendant Sparta had multiple male employees who held director-level titles.

   ii. For 19 months after being hired by Defendant Sparta, Plaintiff continued to request that she be given a director-level title, as the work she was performing was that of a director (more specifically, that of a Senior Director as the Global Head of a function); however, she continued to be denied the same. Notably, multiple male employees who were hired during this time were given director-level titles.

   iii. Following her hire, Plaintiff also requested a larger compensation package, as again, she was performing the work of a Global Director / Senior Director; however, she was told by Marnien that Defendant Sparta was too small of a company to consider robust compensation packages. However, Plaintiff worked with male Directors within Defendant Sparta and Defendant Sparta entered into employment agreements with robust Sr. Director level salary packages with them.

   iv. Even after Plaintiff's title changed from Manager of Talent Acquisition to Global Director of Talent Acquisition in January of

      2020, Plaintiff was still not paid equally to that of other male directors within Defendant Sparta.

  v. Between 2018 and when Defendant Honeywell acquired Defendant Sparta, several male directors who were hired during this time frame were offered equity in Defendant Sparta. However, when Plaintiff was performing the work of a director and even after she was officially given a director title, she was never offered equity (despite her requests for the same).

  vi. Statistically, there was a higher percentage of male directors who were given equity in Defendant Sparta than female directors between 2018 and 2020. In fact, only one female director was given equity during this time frame.

  vii. Statistically, male directors and managers were paid higher salaries and overall total cash compensation (when considering bonus payments) than female directors and managers during Plaintiff's employment with Defendant Sparta.

29. Plaintiff consistently raised concerns of unequal pay and gender disparities/discrimination within Defendant Sparta to Marnien.

30. Plaintiff also raised concerns of reverse age discrimination to Marnien, as Marnien consistently treated others who were older than Plaintiff (within Defendants' Human Resources department) in a more favorable manner by way of her selective enforcement of policies against Plaintiff and not the older employees, her negative treatment of Plaintiff versus

7

the positive treatment she gave the older employees, and the overall praise and employment opportunities she gave to the older employees (but not Plaintiff).

31. Marnien never properly investigated or remedied Plaintiff's aforesaid concerns of discrimination and those violations of state and federal law continued for the entirety of her employment with Defendant Sparta.

32. Plaintiff continued to complain about the aforesaid unequal pay, gender disparities/discrimination, and reverse age discrimination even after Defendant Honeywell acquired Defendant Sparta.

33. In fact, instead of properly investigating and remedying Plaintiff's concerns of discrimination under state and federal law, Marnien instead subjected her to retaliatory measures – which continued even after Defendant Honeywell acquired Defendant Sparta and through the time of her termination.

34. For example:

    i. Marnien treated Plaintiff in a rude and demeaning manner;

    ii. Marnien belittled Plaintiff, sabotaged her work, and marginalized her role within Defendants' organizations;

    iii. Marnien gradually stripped Plaintiff of her job duties within Defendants' organizations, blocked her license and access to a system that she needed in order to effectively perform her role;

    iv. Marnien kept Plaintiff out of various important meetings which she would have needed to attend in order to effectively perform in her role;

    v. Marnien blamed Plaintiff for Marnien's mistakes (or mistakes of others); and

      vi. Marnien took credit for Plaintiff's ideas.[2]

35. Plaintiff informed Marnien that she believed she was being retaliated against for engaging in protected activity under various state and federal laws; however, her concerns were ignored.

36. In addition to Marnien, Plaintiff also complained of unequal pay, gender disparities, gender discrimination, reverse age discrimination and retaliation (as described *supra*) to other members of Defendants' management within Defendant Honeywell after its acquisition of Defendant Sparta both verbally and in writing, including but not limited to Vice President of Human Resources - Gill Chandrasena (hereinafter "Chandrasena").

37. Plaintiff's aforesaid concerns of discrimination and retaliation to Chandrasena were also dismissed and never properly investigated or resolved.

38. Instead, Plaintiff continued to be subjected to retaliation and her work environment became so hostile that she was forced to take a medical leave of absence between October of 2021 and December of 2021.

39. Shortly after returning from her medical leave of absence, Plaintiff was apprised by Marnien in early 2022 that she was being selected for termination/job elimination – even though she was told by Defendant Honeywell's management throughout her last year of employment that they "did not want [her] to go anywhere."

40. Other employees older than Plaintiff and a male employee within Defendants' Human Resources department were retained for several months following Plaintiff's termination from Defendants.

---

[2] This is not meant to be an exhaustive list of the retaliatory actions that Marnien took against Plaintiff in response to her protected activities under state and federal law.

41. Upon information and belief, Marnien had direct participation in making the decision to eliminate Plaintiff's role/terminate her employment.

42. Upon information and belief, Marnien's decision to eliminate Plaintiff's role and terminate her employment was based on Plaintiff's age, Plaintiff's gender, Plaintiff's actual and perceived medical impairments, her requests for medical accommodations, and on the fact that Plaintiff complained about improper disparate treatment of employees within Defendants' organizations.

43. Plaintiff believes and therefore avers that she was terminated for discriminatory/retaliatory reasons under state and federal law.

## Count I
### Diane B. Allen Equal Pay Act (N.J.S.A. §§ 34:11-56.1 — 34:11-56.14)
([1] Unequal Pay & [2] Retaliation)
-Against Both Defendants-

44. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

45. Plaintiff is an eligible employee under the definitional terms of N.J.S.A. § 34:11-56.1.

46. Defendants are eligible "employer[s]" under the definitional terms of N.J.S.A. § 34:11-56.1.

47. New Jersey law prohibits employers from "discriminat[ing]in any way in the rate or method of payment of wages to any employee because of his or her sex." N.J.S.A. § 34:11-56.2.

48. Plaintiff was subjected to discrimination in the rate of compensation she received from Defendants in that Plaintiff was not properly paid an equal [1] salary; [2] total compensation (including bonuses); and [3] equity, when compared to her male counterparts

regardless of the fact that, upon information and belief, Plaintiff and her male counterparts were substantially similar in the level of work they were performing, the responsibilities they had, the level of skills, knowledge, and qualifications required for the job, and the amount of work they were performing.

49. Plaintiff complained to Defendants' management on more than one occasion about the aforesaid pay inequalities; however, Plaintiff's complaints pursuant to the Diane B. Allen Equal Pay Act were never properly investigated or resolved by Defendants' management.

50. Instead, Plaintiff was subjected to retaliation (such as sabotaging her work and marginalizing her role) and ultimately terminated from her employment with Defendants.

51. Plaintiff is entitled to all statutory damages and enhancements consistent with the Diane B. Allen Equal Pay Act.

## Count II
## Violation of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)
-Against Both Defendants-

52. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

53. Plaintiff was subjected to ongoing gender discrimination and/or retaliation (for complaining of gender discrimination) while employed with Defendants.

54. Plaintiff complained to Defendants' management on more than one occasion about the aforesaid gender discrimination and retaliation; however, Plaintiff's complaints pursuant to the NJ LAD were never properly investigated or resolved by Defendants' management and instead she was subjected to a retaliatory hostile work environment.

55. Plaintiff was ultimately terminated in March of 2022, after being informed that she was selected for job elimination/termination.

56. Defendants retained a male employee who had less seniority, skills, and qualifications than Plaintiff for several months following her March 2022 termination.

57. Defendants also retained other employees who did not engage in protected activity under the NJ LAD, like Plaintiff.

58. Plaintiff believes and therefore avers that she was terminated because of her gender and/or in retaliation for complaining of gender discrimination.

59. These actions as aforesaid constitute discrimination and retaliation under the NJ LAD.

### Count III
### Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
([1] Gender Discrimination; [2] Retaliation; [3] Hostile Work Environment)
-Against Both Defendants-

60. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

61. Plaintiff was subjected to ongoing gender discrimination and/or retaliation (for complaining of gender discrimination) while employed by Defendants.

62. Plaintiff complained to Defendants' management on more than one occasion about the aforesaid gender discrimination and retaliation; however, Plaintiff's complaints pursuant to Title VII were never properly investigated or resolved by Defendants' management and instead she was subjected to a retaliatory hostile work environment.

63. Plaintiff was ultimately terminated in March of 2022, after being informed that she was selected for job elimination/termination.

64. Defendants retained a male employee who had less seniority, skills, and qualifications than Plaintiff for several months following her March 2022 termination.

65. Defendants also retained other employees who did not engage in protected activity under Title VII, like Plaintiff.

66. Plaintiff believes and therefore avers that she was terminated because of her gender and/or in retaliation for complaining of gender discrimination.

67. Defendants' actions as aforesaid constitute violations of Title VII.

**Count IV**
**Violations of the Equal Pay Act ("Title VII")**
**(Retaliation)**
**-Against Both Defendants-**

68. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

69. Plaintiff complained to Defendants' management on more than one occasion that she was not properly paid an equal [1] salary; [2] total compensation (including bonuses); and [3] equity, when compared to her male counterparts.

70. Plaintiff was ultimately terminated in March of 2022, after being informed that she was selected for job elimination/termination.

71. Defendants retained other employees who did not engage in protected activity under the EPA for several months following her termination.

72. Plaintiff believes and therefore avers that she was terminated because she engaged in protected activity under the EPA.

73. Defendants' actions as aforesaid constitute violations of Title VII.

## Count V
### Violation of the New Jersey Law Against Discrimination ("NJ LAD")
([1] Age Discrimination; [2] Retaliation; [3] Hostile Work Environment)
-Against Both Defendants-

74. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

75. Plaintiff was subjected to ongoing reverse age discrimination by Marnien, as Marnien consistently treated others who were older than Plaintiff (within Defendants' Human Resources department) in a more favorable manner by way of her selective enforcement of policies against Plaintiff and not the older employees, her negative treatment of Plaintiff versus the positive treatment she gave the older employees, and the overall praise and employment opportunities she gave to the older employees (but not to Plaintiff).

76. Plaintiff complained to Defendants' management on more than one occasion about the aforesaid age discrimination and retaliation; however, Plaintiff's complaints pursuant to the NJ LAD were never properly investigated or resolved by Defendants' management and instead, Plaintiff was subjected to a retaliatory hostile work environment.

77. Plaintiff was ultimately terminated in March of 2022, after being informed that she was selected for job elimination/termination.

78. Defendants retained employees older than Plaintiff who had less seniority, skills, and qualifications than Plaintiff for several months following her March 2022 termination.

79. Defendants also retained other employees who did not engage in protected activity under the NJ LAD, like Plaintiff.

80. These actions as aforesaid constitute discrimination and retaliation under the NJ LAD.

**Count VI**
**Violations of the Age Discrimination in Employment Act ("ADEA")**
**([1] Age Discrimination; [2] Retaliation; [3] Hostile Work Environment)**
**-Against Both Defendants-**

81. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

82. Plaintiff was subjected to ongoing reverse age discrimination by Marnien, as Marnien consistently treated others who were older than Plaintiff (within Defendants' Human Resources department) in a more favorable manner by way of her selective enforcement of policies against Plaintiff and not the older employees, her negative treatment of Plaintiff versus the positive treatment she gave the older employees, and the overall praise and employment opportunities she gave to the older employees (but not to Plaintiff).

83. Plaintiff complained to Defendants' management on more than one occasion about the aforesaid age discrimination and retaliation; however, Plaintiff's complaints pursuant to the ADEA were never properly investigated or resolved by Defendants' management and instead, Plaintiff was subjected to a retaliatory hostile work environment.

84. Plaintiff was ultimately terminated in March of 2022, after being informed that she was selected for job elimination/termination.

85. Defendants retained employees older than Plaintiff who had less seniority, skills, and qualifications than Plaintiff for several months following her March 2022 termination.

86. Defendants also retained other employees who did not engage in protected activity under the ADEA, like Plaintiff.

87. These actions as aforesaid constitute discrimination and retaliation under the ADEA.

**Count VII**
**Violation of the New Jersey Law Against Discrimination ("NJ LAD")**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation)**
**-Against Both Defendants-**

88. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

89. Plaintiff suffered from mental health conditions as result of the hostile work environment that she was subjected to, which at times, limited her ability to engage in some daily life activities, including but not limited to sleeping, focusing, working, and engaging in social interaction.

90. In or about October of 2021, Plaintiff requested a reasonable accommodation for her aforesaid health conditions in the form of a block medical leave of absence.

91. Plaintiff's request for a medical accommodation was granted and she took a medical leave of absence to care for and treat for her aforesaid health conditions between October of 2021 and December of 2021.

92. Shortly after returning from her medical leave of absence (discussed *supra*), Plaintiff was informed that her job was being eliminated and she was being terminated, even though she was told by Defendant Honeywell's management throughout her last year of employment that they "did not want [her] to go anywhere."

93. Defendants retained employees who were not disabled and/or who had not requested reasonable medical accommodations for several months following her March 2022 termination.

94. Plaintiff believes and therefore avers that she was terminated because of her [1] actual disabilities; [2] perceived disabilities; [3] record of impairment; and/or [4] requested accommodations.

95. These actions as aforesaid constitute discrimination and retaliation under the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, personal time, sick time, salary, pay increases, equity, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/interference/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded liquidated, punitive, and/or treble damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F.  Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G.  Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

*Christine Stango*
**Christine Stango**

Dated: 6/29/2023